# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 90 C 741 | **DATE** | 7/17/2001 |
| **CASE TITLE** | Harris vs. Hoffmeyer | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] This Court recommends that defendant Richard Hoffmeyer's Motion To Pierce the Corporate Veil Or, In the Alternative, Petition for Leave to File Complaint to Pierce the Corporate Veil be granted in part. More specifically, this Court recommends that Mr. Hoffmeyer's alternative relief - that he be allowed leave to file a complaint to pierce the corporate veil - be granted (#321-1 & #322-2). Enter Report and Recommendation. AK

(11) **X** [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| ✓ | Copy to judge/magistrate judge. | |

number of notices

JUL 18 2001

date docketed

FILED FOR DOCKETING

01 JUL 17 PM 5: 42

docketing deputy initials

date mailed notice

Document Number

332

AC6    courtroom deputy's initials

Date/time received in central Clerk's Office

mailing deputy initials

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HARRIS CUSTOM BUILDERS, INC. )
                             )    No. 90 C 741
            Plaintiff,       )
                             )    Judge James F. Holderman
        v.                   )
                             )    Magistrate Judge
RICHARD HOFFMEYER,           )    Arlander Keys
                             )
            Defendant.       )
                             )

TO:  THE HONORABLE JAMES F. HOLDERMAN
     UNITED STATES DISTRICT COURT JUDGE

## REPORT AND RECOMMENDATION

Before the Court is Defendant Richard Hoffmeyer's Motion To
Pierce the Corporate Veil Or, In the Alternative, Petition for
Leave to File Complaint to Pierce the Corporate Veil.   For the
reasons set forth below, this Court finds that there is ample
evidence to support piercing Plaintiff Harris Custom Builders,
Inc.'s, ("HCB") corporate veil, but, because of the unsettled law
regarding whether a corporate veil may be pierced in a
supplementary proceeding such as this, this Court recommends that
Defendant be allowed leave to file a complaint to pierce the
corporate veil, and that the supplementary proceeding be stayed
pending the outcome of that separate cause of action.   This Court
further recommends that the HCB property, which was transferred to

Evan Harris, in 1997, be immediately turned over to Defendant (the judgment creditor), as, in a supplementary proceeding, the Court does not need to pierce the corporate veil to reach assets that belong to a judgment debtor, such as HCB, that were transferred to a third party, such as Mr. Harris. Therefore, the Court recommends that Defendant's Motion be granted in part.[1]

## BACKGROUND

In 1990, HCB filed a complaint against Richard Hoffmeyer alleging, *inter alia*, copyright infringement. In 1995, HCB prevailed in the district court, but it's victory was short-lived, as the Seventh Circuit reversed in 1996. In 1997, the district court awarded fees in the amount of $228,981.00 to Mr. Hoffmeyer, as the prevailing party, noting that it was "in light of this court's previous error in accepting plaintiff's erroneous arguments which prompted this court's ruling against Mr. Hoffmeyer's position. That decision prolonged this litigation in error." (Defendant's Brief in Support of Motion to Pierce the Corporate

---

[1] While the Court ultimately concludes that the corporate veil cannot be pierced in a supplementary proceeding, this Report and Recommendation ("R & R"), nevertheless, will go through the analysis of piercing the corporate veil, to illustrate the egregious nature of Mr. Harris' diversion of assets, and to bolster its recommendation that these supplementary proceedings be stayed pending the outcome of the separate complaint to pierce the corporate veil.

Veil ("Def.'s Brief"), Ex. D, July 15, 1997 Order). After the Seventh Circuit sought clarification of the 1997 Order and remanded it back to the district court, it was ultimately affirmed on June 17, 1999.[2] However, Mr. Hoffmeyer has been unable to collect any part of this judgment.

Evan Harris is the sole shareholder of HCB. From 1976 through 1995, HCB was actively engaged in the business of building homes in the western suburbs of Chicago. Although Mr. Harris testified in his deposition that HCB actively ceased doing business in 1995 (see Def.'s Brief, Ex. F, Evan Harris Dep. at 10), HCB's 1995 tax records indicate that it had gross receipts or sales of over $3,000,000. (Def.'s Brief, Ex. E, 1995 Corporate Tax Return.)

In 1996 - the same year that the Seventh Circuit ruled against HCB - HCB technically ceased doing business, as its 1996 tax

---

[2] In 1998, the Seventh Circuit remanded the fee award back to the district court for clarification. *See Harris Custom Builders, Inc. v. Hoffmeyer*, 140 F.3d 728, 729 (7th Cir. 1998). In a minute order dated September 29, 1998 (attached to Def.'s Brief at Ex. A), the district court clarified its previous Order stating: "Plaintiff's motivation was an attempt to defeat a business competitor through this litigation. Looking at the Seventh Circuit's analysis, Plaintiff's claim was not reasonably viable under the facts and the law. Defendant was financially destroyed by this meritless lawsuit in which he ultimately prevailed. He should be compensated for his fees and plaintiff should be deterred." After this clarification, the fee award was ultimately affirmed by the Seventh Circuit on June 17, 1999.

records indicate that it had gross receipts or sales of about $32,000.[3] (Def.'s Brief, Ex. G, 1996 Corporate Tax Return.) Mr. Harris, however, did not cease building houses in Chicago. Rather, he continued (and continues) to build homes in the western suburbs of Chicago through two limited liability companies that were formed in 1995: Harris Builders, LLC and Harris Properties, LLC[4], of which he owns 90% of the shares of both companies. (His family members own the remaining 10%.) (Def.'s Brief, Ex. F, Mr. Harris Dep. at 34.)

Although Mr. Harris claims that HCB is insolvent (as of February 1, 2001, HCB had $18.07 in its bank account) - and, therefore, cannot pay its outstanding judgment of $228,981.00 to Mr. Hoffmeyer - Mr. Harris currently uses the name HCB in his advertisements for Harris Builders, even though, according to Mr. Harris, HCB ceased actively doing business in 1995. For instance,

_____

[3] However, the 1996 tax records show that there was a shareholder loan to HCB in the amount of $575,854 for the beginning of the tax year, and a shareholder loan of $501,520 for the end of the tax year. (Def.'s Brief, Ex. G., 1996 Corporate Tax Return, Schedule L at line 19.) Since Mr. Harris was the sole shareholder of HCB, it appears that he was loaning a great deal of money to HCB, even though it was allegedly going out of business.

[4] Apparently, Harris Builders designs and builds the homes, while Harris Properties owns the property where the homes are built. (Def.'s Brief, Ex. F, Mr. Harris Dep. at 29 & 31.)

Harris Builder's web page (whose Internet address is "HarrisCustomBuilders.com") states, in pertinent part: "Harris Custom Builders: A Family Affair . . . Cradled within the arms of luxury is how you will experience life in your new home by Harris Custom Builders. Established in the early 70's, Evan Harris sought to develop homes that envelope [sic] the homeowner in elegance while entertaining the strength of quality through and through. The ideals established so may years ago are still upheld today." (Def.'s Brief, Ex. K, Web Page.) Therefore, according to Mr. Hoffmeyer, Mr. Harris uses the name recognition associated with HCB (as well as its web address and phone number) in his new business Harris Builders – a business that does exactly the same kind of work as the insolvent HCB. Furthermore, as pointed out by Mr. Hoffmeyer, signs displaying the name "Harris Custom Builders" are used to sell homes built by Harris Builders on property owned by Harris Properties. (*See* Def.'s Brief, Ex. L.) Therefore, it appears that Mr. Harris is using the good will of HCB to promote properties he is offering to sell through his other companies – property in which HCB has absolutely no legitimate ownership interest.[5]

---

[5] Indeed, in 1998, some Harris Builder's customers believed
(continued...)

In addition to employing HCB's name and good will to benefit his new businesses, Mr. Harris also transferred, in 1997, HCB's remaining real property to himself, apparently, obtaining the $12,621.76 earnest money for the purchase from HCB itself. (Def.'s Brief, Ex. H, Sale Documents; *see also* Def.'s Reply, Ex. 2.) While Mr. Harris argues, in his Response to Defendant's Motion to Pierce the Corporate Veil ("Response"), that his purchase of the property from HCB was not a diversion of assets from the company, but rather was a legitimate purchase worth $48,000, the evidence strongly suggests that the earnest money deposit for the property came from HCB itself. Furthermore, HCB's assertion that the timing of the purchase, on February 24, 1997, does not illustrate an intent on the part of HCB to minimize its assets to the detriment of creditors, because the transfer occurred more than a month before Mr. Hoffmeyer moved the district court for attorney's fees, and almost five months before the district court granted Mr. Hoffmeyer's request, is entirely unconvincing, as it was *after* the

---

[5](...continued)
they were purchasing property from HCB, despite HCB's alleged cessation of business in 1995. (*See* Def.'s Brief, Ex. M, Customer Testimonials.)

Seventh Circuit reversed HCB's judgment.[6] Also, as pointed out by Mr. Hoffmeyer in his Reply, on February 18, 1997 - six days before the transfer - the United States Supreme Court mailed HCB its order denying HCB's petition for writ of certiorari for the underlying case. (*See* Def.'s Reply, Ex. 1.) Therefore, the timing of the transfer does, in fact, support the inference that HCB was diverting assets to the detriment of creditors, such as Mr. Hoffmeyer.

Furthermore, Mr. Hoffmeyer argues that HCB was inadequately capitalized to be pursuing litigation against Mr. Hoffmeyer. As of December 18, 1997, HCB had approximately $9.00 in its bank account, in 1998, it had approximately $18.00, and in February 2001, it had a mere $18.07. (Def.'s Brief, Ex. I., 1997 and 1998 Balance Sheets; Def.'s Motion at ¶ 5.) Nonetheless, HCB was (and is) able to

---

[6] Furthermore, Mr. Hoffmeyer explains in his Reply that, from February 24, 1997 to August 15, 1997, the real property was held in trust by the American National Bank for Harris Custom Builders. According to Mr. Hoffmeyer, on August 15, 1997 - one month after the district court entered an award for Mr. Hoffmeyer in the amount of $228,981.00 - Mr. Harris filed the assignment with the trustee, thus completing the transfer of the interest in the property from HCB to himself. Assuming this is true (the Court has no reason to doubt Mr. Hoffmeyer's assertion but notes that there are no accompanying exhibits to establish the accuracy of the assertion), it further undermines HCB's contention that the timing of the transfer does not support an inference of diversion of assets to the detriment of creditors.

continue legal proceedings in this case while being inadequately

capitalized.[7]  In other words, according to Mr. Hoffmeyer, HCB is

insolvent and cannot pay Mr. Hoffmeyer his attorney's fees, yet,

---

[7]Mr. Harris' assertion in his Response that it was Mr.
Hoffmeyer – and not HCB – who continued to litigate this case
after 1996, and that the litigation continued (and continues)
only because of Mr. Hoffmeyer's pursuit of attorney's fees, is
disingenuous at best.  In 1996, the Seventh Circuit reversed the
judgment that had been in favor of HCB.  Thereafter, on July 15,
1997, the district court awarded attorney's fees to Mr. Hoffmeyer
as the prevailing party.  On August 12, 1997, HCB appealed that
decision to the Seventh Circuit, which remanded the issue back to
the district court for clarification.  On September 29, 1998, the
district court clarified its decision in a minute order, again
awarding attorney's fees to Mr. Hoffmeyer, and noting that HCB's
"motivation was an attempt to defeat a business competitor
through this litigation"; that Mr. Hoffmeyer "was financially
destroyed by this meritless lawsuit in which he ultimately
prevailed"; and that Mr. Hoffmeyer "should be compensated for his
fees and plaintiff should be deterred."  (Def.'s Brief, Ex. A,
Sept. 29, 1998 Minute Order.)  Therefore, the mere fact that HCB
appealed, in August 1997, the initial award of attorney's fees to
Mr. Hoffmeyer, illustrates that it was continuing the litigation.
Moreover, a party cannot instigate litigation, and then when it
loses and is ordered to pay attorney's fees, argue that it is the
other party (i.e. Mr. Hoffmeyer) who is continuing the litigation
by pursuing attorney's fees.  It was HCB who initially sued Mr.
Hoffmeyer, and it was HCB's responsibility to make sure it had
enough capital to pursue litigation, including the possibility
that it might be ordered to pay attorney's fees.  As explained in
detail *infra*, it appears that, once HCB's judgment was reversed
by the Seventh Circuit, in 1996, HCB started to divert assets.
HCB's assertion that the merits of the case were being litigated
between 1990 through 1995 – when HCB had enough capital – is of
little consequence, as it was only after it lost on the merits in
1996, and faced the possibility of having to pay attorney's fees,
that HCB started to divert assets.

apparently, it has enough money to pay its own attorneys.[8]

Additionally, in 1997, despite HCB's insolvency, Mr. Harris, ostensibly, repaid himself a $20,000 loan, thereby preferring himself as a creditor.[9] Furthermore, while taking steps to defeat

---

[8] While Mr. Harris claims, in his Response, that HCB's attorneys were being compensated on a contingency fee basis since Mr. Hoffmeyer's appeal, on August 15, 1995, of the original decision in favor of HCB, through the beginning of these supplemental proceedings in December 2000, and that HCB's attorneys were not paid any money during this time period (*see* Pl.'s Response, Ex. B, Certification of Evan Harris, at ¶¶ 4-5.), HCB's operating statements belie such assertions, by showing that $14,041 was paid to HCB's attorneys in 1996, and $13,114.28 paid to HCB's attorneys in 1997. (*See* Def.'s Reply, Exs. 3 & 4.) Furthermore, as aptly pointed out by Mr. Hoffmeyer in his Reply, if HCB's current attorneys have been paid, then this is an improper use of corporate funds, as Mr. Hoffmeyer's December 27, 2000 Citation to Discover Assets put a lien on HCB's assets. If, however, Mr. Harris, himself, is paying the attorney fees, then this supports Mr. Hoffmeyer's position that HCB and Mr. Harris are commingling funds and that HCB is not a distinct corporate entity, discussed in more detail *infra*.

[9] In Mr. Hoffmeyer's Brief, he cites Exhibits G and I as evidence that, during 1997, Mr. Harris used at least $20,000 to repay himself for personal loans. However, the Court cannot find evidence of the $20,000 repayment of personal loans in these exhibits. Nonetheless, in HCB's Response, it does not refute that Mr. Harris repaid himself $20,000 in loans. Rather, HCB argues that there is nothing unusual about a shareholder loaning money to a corporation. While this might be true, as the cases show (discussed *infra*), when a dominant shareholder prefers himself as a creditor to the detriment of other creditors, this can be evidence to support piercing the corporate veil. Therefore, for the purposes of this R & R, the Court assumes as true that Mr. Harris repaid himself loans in 1997 (because HCB does not deny it), and, consequently, preferred himself as a
(continued...)

creditors such as Mr. Hoffmeyer, Mr. Harris was also apparently cheating the United States government out of tax revenue. On April 14, 2000, the IRS brought a criminal action against Mr. Harris, *USA v. Evan A. Harris*, 00 CR 291. In the ensuing plea agreement on July 13, 2000, Mr. Harris admitted that he did not report income received from HCB, and knowingly misrepresented assets of HCB by overstating expenses. (*See* Def.'s Brief, Ex. C, Plea Agreement.)

## DISCUSSION

As developed more fully below, the Court finds that there is an abundance of evidence to support piercing the corporate veil, and to find Mr. Harris personally liable for the $228,981.00 judgment.[10] Nonetheless, because the Court recognizes that the more

---

[9](...continued)
creditor. Of course, if this is not true, then HCB will be able to refute such allegations after Mr. Hoffmeyer files his separate complaint to pierce the corporate veil.

[10] Mr. Hoffmeyer also requests, on the last page of his Brief, that the Court, essentially, "reverse" pierce the corporate veil, and hold Harris Builders and Harris Properties liable for HCB's debt as well. The Court will not address this "reverse" piercing argument, and, instead, suggests that Mr. Hoffmeyer develop these allegations in his separate complaint to pierce - or reverse pierce - the corporate veil. As recognized by Mr. Hoffmeyer, he needs discovery to ascertain whether Harris Builders and Harris Properties have assets which were at one time used or owned by HCB. By recommending that he be allowed leave to file a separate complaint, he should be able to conduct the necessary discovery.

recent legal authority does not allow a corporate veil to be pierced in a supplemental hearing, the Court recommends that Mr. Hoffmeyer be allowed leave to file a separate complaint to pierce the corporate veil, and that these supplemental proceedings be stayed pending that outcome.

## I.    Evidence to Support Piercing the Corporate Veil

Illinois courts apply a two-prong test in determining whether to pierce the corporate veil:

> First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist; and second, circumstances must be that such an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.

*Hystro Products, Inc. v. MNP Corp.*, 18 F.3d 1384, 1388-89 (7th Cir. 1994).

### A.    First Prong

With respect to the first prong, in order to find sufficient unity of interest and ownership to warrant piercing the corporate veil, Illinois courts consider several factors: inadequate capitalization; failure to issue stock; failure to observe corporate formalities; nonpayment of dividends; insolvency of the debtor corporation; nonfunctioning of the other officers or directors; absence of corporate records; commingling of funds;

diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; failure to maintain arm's length relationships among related entities, and whether, in fact, the corporation is only a mere facade for the operation of the dominant shareholders. *In re Estate of Wallen*, 633 N.E.2d 1350, 1357 (Ill. App. Cr. 1994). Significantly, no single factor is determinative in deciding whether to disregard a corporate entity. *Id.*

In this case, there is ample evidence that HCB was merely the alter ego or conduit of the dominant personality, Mr. Harris. However, because the Court ultimately recommends that a separate complaint be filed to address the issue of piercing the corporate veil, it will not analyze each and every one of the aforementioned factors. Rather, the Court will briefly discuss the most egregious examples to support its recommendation that Mr. Hoffmeyer be granted leave to file a separate complaint to pierce the corporate veil: inadequate capitalization, insolvency of the corporation, commingling of funds, and diversion of assets to the detriment of creditors (including Mr. Harris preferring himself as a creditor).

"To determine whether a corporation is adequately capitalized, one must compare the amount of capital to the amount

of business to be conducted and obligations to be fulfilled. Absent adequate capitalization, a corporation becomes a mere liability shield, rather than an independent entity capable of carrying on its own business." *Fiumetto v. Garrett Enterprises, Inc.*, No. 2-00-0456, 2001 WL 467959, *10 (Ill. App. Ct. April 25, 2001)(citations omitted). Here, HCB brought litigation against Mr. Hoffmeyer – litigation that resulted, in 1997, in HCB having to pay Mr. Hoffmeyer $228,981.00 in attorney's fees. While paying its own attorneys $14,041 in 1996, and $13,114.28 in 1997 (*see* Def.'s Reply, Exs. 3 & 4, Operating Expenses), HCB does not have enough money to pay Mr. Hoffmeyer. HCB only had approximately $9.00 in its account in 1997, approximately $18.00 in 1998, and as of February 1, 2001, had only $18.07. Yet, Mr. Harris – who was the sole and dominant shareholder of HCB – continued, after HCB became insolvent, his *exact same business* of building homes, through two new limited liability companies, Harris Builders and Harris Properties, respectively. Significantly, these new companies used (and use) the name "Harris Custom Builders" in their advertisements, and the address of their web page is actually HarrisCustomBuilders.com. It appears that HCB transferred many of its assets, including its name, phone number, and good will to

Harris Properties and Harris Builders.[11]  Essentially, what appears to have transpired, is that, once Mr. Harris realized that he could be liable for attorney's fees, he shifted his assets (real property and cash) out of HCB – preferring himself as a creditor – and continued the same business through two new companies.

Mr. Harris now claims that HCB is insolvent, but that it had enough capital between 1990-1995 to bring litigation.  Mr. Harris blames the continuation of litigation past 1995 on Mr. Hoffmeyer. However, as discussed *supra*, it is disingenuous for Mr. Harris to assert that it was Mr. Hoffmeyer who continued the litigation past 1995, as HCB initially brought the litigation (which the district court ultimately concluded was brought for an improper purpose, to

---

[11] Mr. Harris argues in his Response that the use of one company's trademark by another does not show that the two are instrumentalities of each, and cites *Logal v. Inland Steel Indus., Inc.*, 568 N.E.2d 152 (Ill. App. Ct. 1991) and *Paredes v. Abercrombie & Kent Int'l, Inc.*, 81 F. Supp.2d 162 (D. Mass. 1999) for this proposition. However both cases are inapposite to the case *sub judice*.  In *Logal*, the court recognized that many corporations use trademarks of other corporations under license agreements, and that a company's use of another's trademark, without more, does not show that the two are instrumentalities of each other.  568 N.E.2d at 157.  Here, there was no such license agreement, and there is ample other evidence to support piercing the corporate veil.  In *Paredes*, the two corporations at issue had similar names, and there was no evidence of inadequate capitalization or commingling of funds.  81 F. Supp.2d at 166. Here, however, there is much more evidence of inadequate capitalization and commingling of funds than just the interchanging of names.

defeat a business competitor) and had a responsibility to make sure that it had adequate capital in case it lost and was ordered to pay attorney's fees. Considering that Mr. Harris is currently involved in the exact same business as before, and using the good will associated with Harris Custom Builders in his new companies (and customers, in fact, believe they are purchasing houses through HCB), Mr. Harris has suffered absolutely no detriment, while being able to thwart Mr. Hoffmeyer's ability to recover his judgment of $228,981.00. In sum, there is evidence of insolvency and inadequate capitalization.

Furthermore, there is ample evidence that Mr. Harris commingled funds and, significantly, preferred himself as a creditor. Several cases in this jurisdiction hold that, when a dominant shareholder commingles corporate funds with personal funds, and prefers himself as a creditor, there is evidence supporting piercing the corporate veil.[12] For instance, in *Ted*

---

[12] HCB argues in its Response that Mr. Hoffmeyer failed to support his assertions to pierce the corporate veil with proper legal authority, and that his arguments should, therefore, be considered waived. While HCB cites *United States v. Dunkel*, 927 F.2d 955 (7th Cir. 1991) for this proposition, *Dunkel* is entirely inapposite to this case. In *Dunkel*, the Seventh Circuit held that a skeletal assertion in a brief does not preserve an issue for appeal. *Id.* at 956. Here, Mr. Hoffmeyer cites general case law supporting his argument that the corporate veil should be

(continued...)

*Harrison Oil Co., Inc. v. Dokka*, 617 N.E.2d 898, 902 (Ill. App. Ct. 1993), the appellate court, in affirming the lower court's piercing of the corporate veil, found that the dominant shareholder was receiving monetary benefits at a time when the corporation was defaulting on the loan to a judgment creditor. Significantly, the *Dokka* court stated that it could consider whether the dominant individuals preferred themselves as creditors as evidence supporting piercing the corporate veil. *Id.*; *see also Plumbers' Pension Fund, Local 130, U.A. v. A-Best Plumbing & Sewer, Inc.*, No. 88 C 3087, 1992 WL 59098, at * 5 (N.D. Ill. March 16, 1992)(piercing the corporate veil and noting that "the circumstances surrounding the loan repayment . . .give rise to the inescapable inference that the [shareholders] drained money from [corporation] to avoid impending liability."); *State Bank of Cerro Gordo v. Benton*, 317 N.E.2d 578, 579-80 (Ill. App. Ct. 1974)

---

[12](...continued)
pierced.   While the Court agrees that Mr. Hoffmeyer's attorneys could have cited more specific legal authority to better support its assertions, especially concerning whether a dominant shareholder can prefer himself as a creditor (*see Dokka*, *Plumbers' Pension Fund*, and *Benton*, *infra*), there, nonetheless, is no reason to consider that his arguments have been waived. Indeed, in the separate proceeding dealing exclusively with piercing the corporate veil, Mr. Hoffmeyer's attorneys can cite the more fact specific legal authority to support their arguments.

(finding that the corporate veil was properly pierced where the sole shareholder, who ran the corporation, repaid himself a loan to the exclusion of other creditors).

Here, HCB argues that it is entirely proper for shareholders to loan money to corporations, instead of the corporation taking a corporate loan from a bank. While this may be true, it is entirely improper for a corporation to prefer a dominant shareholder as a creditor to the detriment of other creditors. In other words, once HCB became aware that the district court might award attorney's fees to Mr. Hoffmeyer (such as after the Seventh Circuit reversed judgment for HCB in 1996, or when, in February 1997, the Supreme Court denied certiorari on the underlying case)[13], it was problematic for HCB to decide to repay its loans to Mr. Harris, and

---

[13] In *Plumbers' Pension Fund, supra,* the dominant shareholder argued that the loan was repaid *before* the actual adverse ruling, thereby rebutting the inference that its purpose was to avoid liability. However, the court held that, once a case is set for decision, there "exists a significant risk that the decision could be adverse." 1992 WL 59098 at * 6. Similarly, here, although Mr. Harris argues that the transfer of the property to himself occurred before the district court's award of attorney's fees, the Seventh Circuit had already reversed judgment for HCB, and the Supreme Court had already denied certiorari on the underlying case. Therefore, there was already a risk that the decision concerning attorney's fees could be adverse.

transfer real property to Mr. Harris,[14] to the detriment of the judgment creditor, Mr. Hoffmeyer. Additionally, Mr. Harris' admission in his plea agreement that he failed to report income received from HCB on his tax returns, and misrepresented HCB's assets (by overstating expenses, for instance), only bolsters the inference that HCB was improperly commingling personal funds with business funds.[15]

## B. Second Prong

With regard to the second prong for piercing the corporate veil (a finding that adherence to a separate corporate existence would promote a fraud or injustice), Illinois does not require an

---

[14] While Mr. Harris argues that he bought the real property for the fair market value of $48,000 and that, therefore, it was not a "transfer" of property, none of the $48,000 was available to pay Mr. Hoffmeyer. Furthermore, as discussed *supra*, it appears that the $12,621.76 earnest money came from HCB itself. If true, this bolsters Mr. Hoffmeyer's assertion that the property was transferred to Mr. Harris to defeat the rights of creditors, such as himself, and that Mr. Harris was improperly commingling funds.

[15] Specifically, on Mr. Harris' 1993 U.S. Individual Tax Return, he falsely stated that his total income was $59,847, while knowingly failing to report approximately $508,000 in income from HCB. On Mr. Harris' 1994 U.S. Individual Tax Return, he, again, knowingly did not report approximately $250,000 in additional income received from HCB. On the 1994 and 1995 U.S. Income Tax Returns for an S Corporation, Mr. Harris overstated HCB's costs of goods sold. (*See* Def.'s Brief, Ex. C., Plea Agreement ¶6(a),(b),(c).)

intent to defraud creditors, although such an intent would surely play a part if established. *Van Dorn Company v. Future Chemical and Oil Corp.,* 753 F.2d 565, 570 (7th Cir. 1985). Rather, the "promotion of an injustice" will satisfy the second element. *Id*. In *Van Dorn*, the dominant shareholder dissipated a company's assets, rendering it insolvent to the prejudice of its only creditor, and to the benefit of the shareholder's other corporations. *Id*. at 572-73. The Seventh Circuit affirmed the district court's determination that such conduct was unjust and warranted piercing of the corporate veil. *Id*.

Here, as discussed *supra* (and which may be developed in more detail in Mr. Hoffmeyer's separate complaint to pierce the corporate veil), there is evidence of an intent to defraud creditors. Nonetheless, even if there was no such evidence, there is certainly evidence that injustice will result if HCB's corporate veil is not pierced. After all, Mr. Harris – the dominant and sole shareholder – stripped HCB of its assets (by repaying himself personal loans and transferring real property to himself) to the detriment of its only creditor, Mr. Hoffmeyer. *See also Sea-Land Services, Inc. v. Pepper Source*, 993 F.2d 1309, 1312 (7th Cir. 1993)(finding injustice prong satisfied, where the dominant

shareholder was "unjustly enriched" by his intentional manipulation and diversion of funds). In sum, this Court finds ample evidence to support piercing the corporate veil, but, because of the constraints discussed *infra*, instead recommends that Mr. Hoffmeyer be granted leave to file a separate complaint.

## II. Supplementary Proceedings

Pursuant to Section 2-1402 of the Illinois Code, a judgment creditor may prosecute supplementary proceedings by service of citation upon the judgment debtor, or any other person, to discover assets or income of the debtor, and to compel application of nonexempt assets or income toward the payment of the amount due under the judgment. 735 ILCS 5/2-1402(a) (West 2000). "Supplementary proceedings under Section 2-1402 are designed to provide a statutory foundation for an efficient and expeditious procedure to compel discovery of assets of the debtor and their application to the payment of the judgment." *Bank of Aspen v. Fox Cartage, Inc.*, 490 N.E.2d 145, 147 (Ill. App. Ct. 1986)(citations omitted). Section 2-1402 is to be construed liberally, not only providing for the discovery of a debtor's assets and income, but also vesting the courts with "broad powers to compel the application of discovered assets or income to satisfy a judgment."

*City of Chicago v. Air Auto Leasing Co.,*, 697 N.E.2d 788, 791 (Ill. App. Ct. 1998)(citation omitted). When the citation is served, it creates a judgment lien "upon all personal property belonging to the judgment debtor in possession or control" of the judgment debtor or third party. *Id.* (citing 735 ILCS 5/2-1402(m)(1)).

Illinois Supreme Court Rule 277(a), which implements Section 2-1402 of the Illinois Code, provides, in pertinent part:

> A supplementary proceeding authorized by section 2-1402 of the Code of Civil Procedure may be commenced at any time with respect to a judgment which is subject to enforcement. The proceeding may be against the judgment debtor *or any third party* the judgment creditor believes has property of or is indebted to the judgment debtor.

Ill. S. Ct. Rule 277(a)(emphasis added). Accordingly, Rule 277 requires that the judgment creditor (here, Mr. Hoffmeyer) believe that third parties (here, Mr. Harris) have property of, or are indebted to, the judgment debtor (here, HCB). "If the creditor can show the third party has property of or is indebted to the judgment debtor, the court is empowered under section 2-1402(b)(3) of the Code to compel the third party to deliver up any assets so discovered or the value thereof, if those assets are held under circumstances in which the judgment debtor could recover them in an appropriate action." *Bentley v. Glenn Shipley Enterprises, Inc.*, 619 N.E.2d 816, 819 (Ill. App. Ct. 1993)(citation omitted). The

burden lies with the judgment creditor to demonstrate that the third party possesses assets of the judgment debtor. *Pelczynski v. Dolatowski*, 721 N.E.2d 196, 200 (Ill. App. Ct. 1999), *appeal denied*, 724 N.E.2d 1269 (Ill. 2000).

Here – entirely independent of an analysis to pierce the corporate veil – Mr. Hoffmeyer, the judgment creditor, has demonstrated that a third party, Mr. Harris, has property belonging to HCB, the judgment debtor. Specifically, Mr. Harris, in 1997, transferred the real property out of HCB to himself, a third party. While Mr. Harris vehemently argues that he paid fair market value for the property, there is evidence that the earnest money for the purchase came from HCB itself. Furthermore, the $48,000 that Mr. Harris claims that he paid for the property was (and is) not available to Mr. Hoffmeyer.[16]   Therefore, it appears that a third

---

[16] Significantly, Mr. Harris' argument that the timing of the transfer does not show an intent to defraud – an assertion that this Court highly doubts (discussed *supra*) - is immaterial in a supplementary proceeding. As explained in *Bentley, supra,* Section 2-1402 of the Illinois Code and Illinois Supreme Court Rule 277 do not require a finding of fraudulent intent on behalf of a judgment debtor in transferring assets to a third party in order for a court to compel that third party to deliver up assets to the judgment creditor. 619 N.E.2d at 819. Rather, "[i]t is enough that the judgment debtor has the right to recover the assets from the third party." *Id*. Here, as explained in depth *supra*, HCB transferred its real property to Mr. Harris – a third

(continued...)

party, Mr. Harris, has property belonging to HCB, the judgment debtor. Accordingly, in a supplementary proceeding, a court may order that such property, in the possession of a third party, be compelled to satisfy the judgment of the judgment creditor. Therefore, this Court recommends that the real property (apparently worth $48,000) be turned over to Mr. Hoffmeyer to partially satisfy the judgment.[17]

---

[16](...continued)
party – and that is enough under these supplementary proceedings to order Mr. Harris to turn over the property to Mr. Hoffmeyer, the judgment creditor.

[17] The Court does not recommend that the supposed $20,000 loan repayment to Mr. Harris be similarly turned over in this supplementary proceeding. Unlike the transfer of the real property, the loan repayment represents money that belongs to the third party, Mr. Harris (and not the judgment debtor, HCB), as it was Mr. Harris who initially loaned the money to HCB. However, as discussed *supra*, the fact that Mr. Harris preferred himself as a creditor is problematic and supports piercing the corporate veil. In other words, as recognized by *Pyshos v. Heart-Land Development Co.*, 630 N.E.2d 1054, 1058 (Ill. App. Ct. 1994), there is a difference between piercing the corporate veil (where Mr. Harris would be held personally liable for the $228,981.000 judgment), which cannot be done in a supplementary proceeding, and conversion of specific and identifiable corporate assets into personal ones (such as the real property), which may be considered in a supplementary proceeding. "An inquiry into whether a third party holds assets of the judgment debtor is proper in supplementary proceedings." *Pyshos*, 630 N.E.2d at 1058; *see also Johnson v. St. Therese Medical Center*, 694 N.E.2d 1088, 1092 (Ill. App. Ct. 1998)("[B]efore a court may enter judgment against a third party in a supplementary proceeding, the record must contain some evidence that the third party possesses
(continued...)

-23-

Finally, Mr. Hoffmeyer correctly recognizes that there is conflicting law regarding whether a court may pierce the corporate veil in a supplementary proceeding. While cases such as *Pyshos, supra,* and *Lange v. Misch,* 598 N.E.2d 412, 415 (Ill. App. Ct.), *appeal denied,* 606 N.E.2d 1227 (1992), clearly hold that corporate veils may not be pierced in a supplementary proceeding (rationalizing that an inquiry into corporate formalities would be beyond the statutory basis of supplementary proceedings), a district court in *Flip Side Productions v. Jam Productions, Ltd.,* No. 82 C. 3884, 1990 WL 186777, at *8 (N.D. Ill. Nov. 8, 1990) held otherwise. However, the Illinois appellate courts decided *Pyshos* and *Lange* after *Flip Side Productions,* and, since Federal Rule of Civil Procedure 69, dealing with judgment enforcement proceedings, conforms collection proceedings to state law, Illinois courts have the final say. *See Matos v. Richard A. Nellis, Inc.,* 101 F.3d 1193, 1195 (7th Cir. 1996)(citing *Pyshos,* and recognizing that Illinois likely would not permit veil-piercing in supplementary proceedings). Of course, guidance from the Illinois Supreme Court would be helpful. Until that time, however, this Court finds that

---

[17](...continued)
assets of the judgment debtor.").

the more prudent course of action would be to grant Mr. Hoffmeyer

leave to file a separate complaint to pierce the corporate veil,

and to stay these supplementary proceedings pending that outcome.[18]

## CONCLUSION

For the reasons set forth above, this Court recommends that

Defendant Richard Hoffmeyer's Motion To Pierce the Corporate Veil

Or, In the Alternative, Petition for Leave to File Complaint to

Pierce the Corporate Veil be granted in part. More specifically,

this Court recommends that Mr. Hoffmeyer's alternative relief –

that he be allowed leave to file a complaint to pierce the

corporate veil – be granted. In addition, this Court recommends

that the District Court order HCB's real property, which was

transferred, in 1997, to Mr. Harris, be turned over to the judgment

---

[18] Arguably, there is no need to stay the supplementary
proceedings, since if Mr. Hoffmeyer prevails on his separate
action to pierce (and reverse pierce) the corporate veil, he
would be able to satisfy his judgment directly against Mr. Harris
and/or Harris Properties and Harris Builders, and would not need
to continue these proceedings against the insolvent HCB.
Nonetheless, in order to preserve all of Mr. Hoffmeyer's options,
this Court recommends that these supplementary proceedings be
stayed pending Mr. Hoffmeyer's separate complaint to pierce the
corporate veil. (Although Mr. Harris argues in his Response that
there is no authority to allow a court to issue a stay of these
proceedings, this Court notes that Section 2-1402 of the Illinois
Code allows the court, upon "good cause shown", to issue a
continuance of the supplementary proceeding. 735 ILCS
5/2-1402(a). In essence, that is what this Court is
recommending.)

creditor, Mr. Hoffmeyer, to partially satisfy the outstanding judgment.

DATED: July 17, 2001      RESPECTFULLY SUBMITTED,


ARLANDER KEYS
United States Magistrate Judge


Counsel have ten days from the date of service to file objections to this Report and Recommendation with the Honorable James F. Holderman. *See* FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990).